UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BRANDY DELOACH, et al., | ) |
| | ) |
| Plaintiffs, | ) No. 1:19-CV-57 RLW |
| | ) |
| v. | ) |
| | ) |
| SHERIFF TERRY STEVENS, et al., | ) |
| | ) |
| Defendants, | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Defendant City of Portageville, Officer Justin Redden, and Chief Ronnie Adams' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted on Counts IX and XI of Plaintiffs' First Amended Complaint (ECF No. 34) and Defendant City of Portageville, Officer Justin Redden, and Chief Ronnie Adams' Joint Motion for Summary Judgment on Counts X and XII of Plaintiffs' First Amended Complaint (ECF No. 50). These matters are fully briefed and ready for disposition.

**BACKGROUND**

On or around August 17, 2018, Decedent John DeLoach ("Decedent") was arrested and taken into custody by Defendant Thomas Hunter ("Hunter"), a New Madrid County Sheriff's Deputy, based upon an outstanding domestic assault warrant. During his search of Decedent, Hunter found a pipe for using methamphetamine and cocaine. Hunter took Decedent to the New Madrid County Sheriff's Department to complete the booking processing, including a medical questionnaire and medical history. During the booking process, Decedent indicated that he did not need any medical treatment. Because New Madrid County does not have a jail, arrestees who are in the custody of New Madrid County are housed at the Pemiscot County Detention Center

("PCDC"). Decedent was placed into a police car by Defendant Michael Bixler ("Bixler"), another New Madrid County Sheriff's Deputy, for transport to PCDC. During his transport from the New Madrid County Sheriff's Department to the PCDC, Decedent became increasingly agitated and disruptive, causing Bixler to request assistance with transporting Decedent. Defendant Justin Redden ("Redden"), a police officer employed by the City of Portageville, Missouri, responded to Bixler's request for assistance. Decedent was transported from the New Madrid County Sheriff's Department to the PCDC in Bixler's patrol car, with Bixler driving, Decedent in the front passenger seat, and Redden in the rear passenger seat. During transit, Redden used his taser to stun Decedent. Decedent arrived at the PCDC at approximately 22:30 and was transferred from the custody of the New Madrid Police Department to the custody of the PCDC. Decedent continued to refuse to cooperate with officers during his booking and continued attempting to remove his restraints. Decedent showered and then was taken to the recreation room for observation on camera. On August 17, 2018 at approximately 23:50, Officer Stewart checked on Decedent in the recreation room and found Decedent unresponsive. The cause of death was determined to be acute methamphetamine intoxication.

Plaintiffs bring this action alleging claims against various defendants under 42 U.S.C. §1983 and R.S. Mo. §537.080. Defendant City of Portageville, Officer Justin Redden, and Chief Ronnie Adams filed a Motion to Dismiss Counts IX and XI of Plaintiffs' First Amended Complaint. Counts IX and XI are claims under 42 U.S.C. §1983 ("§1983"). Defendant City of Portageville, Officer Justin Redden, and Chief Ronnie Adams filed a Joint Motion for Summary Judgment on Counts X and XII of Plaintiffs' First Amended Complaint. Counts X and XII are claims for wrongful death under R.S. Mo. §537.080.

## I. Motion to Dismiss

### A. Standard of Review of Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp., v. Twombly,* 550 U.S 544, 570 (2007)). A "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).

### B. Discussion

In Count IX, Plaintiffs allege a §1983 action against Redden and the City of Portageville. As against Redden, Plaintiffs claim that Redden violated Decedent's Fourteenth Amendment right, as a pretrial detainee, to medical care. (FAC, ¶¶65-72). As against Portageville, Plaintiffs seem to contend that Portageville has respondeat superior liability for Redden's conduct. (FAC, ¶67) ("Defendant[] Redden was at all times acting as the agent, servant and employee of defendant City of Portageville, Missouri."). In Count XI, Plaintiffs allege a §1983 claim against Adams. Plaintiffs claim that Adams violated Decedent's Fourteenth Amendment right, as a pretrial detainee to medical care. (FAC, ¶¶65-72).

Defendants assert that Counts IX and XI fail as a matter of law because, under Missouri's survival statutes, Decedent's §1983 claims do not survive to Plaintiffs and Plaintiffs have no standing to pursue such claims. (ECF No. 34, ¶11.a). Or, even if Missouri's survival statutes preserved an alleged injured party's §1983 claim beyond the death of that party, only such claims pending at the time of the alleged injured party's death could be preserved. (ECF No. 34, ¶11.b).

Defendants assert that, because Decedent filed no §1983 at the time of his death, any §1983 did not survive Decedent and Plaintiffs have no standing to pursue a §1983 claim. In addition, Defendants assert that Plaintiffs' §1983 claim against Portageville in Count IX must be dismissed because a municipal entity cannot be held liable on a §1983 claim under a theory of respondeat superior. (ECF No. 34, ¶11.c).

"Under § 1983, state actors who infringe the constitutional rights of an individual are liable 'to the party injured.'" *Andrews v. Neer*, 253 F.3d at 1052, 1056 (8th Cir. 2001) (citing 42 U.S.C. § 1983). Missouri's wrongful death statute provides that

> [w]henever the death of a person results from any act ... which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who ... would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for: (1) By the spouse or children or the surviving lineal descendants ....

Mo.Rev.Stat. § 537.080. The Eighth Circuit has noted that "[t]he Missouri wrongful death statute ... addresses the survival of injury claims that result in death." *Andrews*, 253 F.3d at 1057–58 (citing *Wollen v. DePaul Health Ctr.*, 828 S.W.2d 681, 685 (Mo. 1992)). "The Missouri Supreme Court has declared the wrongful death statute to be the sole source of a cause of action in Missouri where the injuries sustained by the decedent caused the decedent's death." *Andrews*, 253 F.3d at 1058; *see Sullivan v. Carlisle*, 851 S.W.2d 510, 514, n.6 (Mo. 1993) ("The words "survival" or "survivorship" are used ... to describe certain types of damages available under the wrongful death statute. This statute should not be confused with the so-called "survival statutes," which ensure that *pre-existing claims* will not abate upon the death of the plaintiff or defendant. *See §§ 537.010, 537.020, 537.021*.")).

Plaintiffs argue that Defendants' Motion to Dismiss is ill-founded. Plaintiffs contend Defendants "mistakenly" believe Plaintiffs are bringing a survival action pursuant to the survival statute, §537.020, R.S. Mo. (ECF No. 39 at 2) ("Defendants' Motion for Judgment on the Pleadings should be denied on the issue of Plaintiffs' standing to pursue a wrongful death claim since Defendants mistakenly claim Plaintiffs are bringing a survival action pursuant to 537.020 RSMo.")[1] The Missouri survival statute provides that "[c]auses of action for personal injuries, *other than those resulting in death,* ... shall not abate by reason of [the injured party's] death" and it allows the action to survive "to the personal representative of such injured party." Mo.Rev.Stat. § 537.020(1).[2] The survival statute "unambiguously authorizes the survival of claims that arise from non-fatal personal injuries where the injured party later dies of *unrelated* causes." *Andrews*, 253 F.3d at 1057 (emphasis added); *C.W. by Gray v. Walgreen Co.*, No. 4:17-CV-1488 CAS, 2018 WL 646009, at *3 (E.D. Mo. Jan. 31, 2018). Although the statute requires that such personal injury

---

[1] Missouri's survival statute, provides, in relevant part:

1. Causes of action for personal injuries, *other than those resulting in death*, whether such injuries be to the health or to the person of the injured party, shall not abate by reason of his death, nor by reason of the death of the person against whom such cause of action shall have accrued; but in case of the death of either or both such parties, such cause of action shall survive to the personal representative of such injured party, and against the person, receiver or corporation liable for such injuries and his legal representatives, and the liability and the measure of damages shall be the same as if such death or deaths had not occurred. Causes of action for death shall not abate by reason of the death of any party to any such cause of action, but shall survive to the personal representative of such party bringing such cause of action and against the person, receiver or corporation liable for such death and his or its legal representatives.

2. The right of action for death or the right of action for *personal injury that does not result in the death* shall be sufficient to authorize and to require the appointment of a personal representative by the probate division of the circuit court upon the written application therefor by one or more of the beneficiaries of the deceased. . . .

Mo. Rev. Stat. § 537.020 (emphases added).

claims must be pursued by the personal representative of the decedent's estate, "[t]he statute's language clearly limits its application to cases where the personal injury did not cause the decedent's death." *Id.*; *see* Mo. Rev. Stat. § 537.020.1 ("Causes of action for personal injuries, *other than those resulting in death*, ... shall not abate by reason of his death ....") (emphasis added). "Where the personal injury caused the decedent's death, the survival statute does not apply". *C.W. by Gray*, 2018 WL 646009, at *3. Rather, the wrongful death statute would then apply. *Wollen v. DePaul Health Ctr.*, 828 S.W.2d 681, 685 (Mo.1992) ("The language of the survivorship statute and the wrongful death statute are mutually antagonistic. The survivorship statute applies when the injury alleged did *not* cause death, and the wrongful death statute applies when the injury did cause death.").

Here, Plaintiffs allege that Defendants' actions and inaction injured the Decedent, violating his Fourteenth Amendment right to medical care. Those injuries resulted in Decedent's death and, consequently, the Missouri survival statute does not apply. *Andrews*, 253 F.3d at 1057; *Cf. Foster v. Midwest Sec. Hous., LLC,* No. 05-06116-CV-SJ-GAF, 2006 WL 8438393, at *3 (W.D. Mo. Oct. 3, 2006) ("courts have recognized that survivors may pursue constitutional claims for injuries they have suffered separate and apart from the constitutional claims they brought on behalf of the decedent for the decedent's injuries or death"). Plaintiffs' attempt to recover damages on their own behalf under § 1983 for the wrongful death of Decedent is not permissible. *Foster*, 2006 WL 8438393, at *2 ("§ 1983 does not allow a surviving family member to collect damages on his own behalf for the wrongful death of another"). Plaintiffs do not have standing under the Missouri survival statute to pursue a § 1983 claim for injuries caused by the Defendants to Decedent. *See C.W. by Gray*, 2018 WL 646009, at *3; *Andrews*, 253 F.3d at 1057–58 ("even if [the decedent's daughter] had been appointed as personal representative of her deceased father, she would not have

standing under the Missouri survival statute to pursue a § 1983 claim for injuries [where] [t]hose injuries resulted in his death."). The Court, therefore, grants Defendants' Motion to Dismiss because Plaintiffs do not have standing to bring a §1983 action against Defendants on behalf of Decedent.

### II. Motion for Summary Judgment

#### A. Standard of Review for Motion for Summary Judgment

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor.

*Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### B. Defendants City of Portageville, Officer Justin Redden and Chief Ronnie Adams' Joint Motion for Summary Judgment on Counts X and XII of Plaintiff's First Amended Complaint

Count X of Plaintiff's First Amended Complaint is against Defendants City of Portageville, Missouri and Office Justin Redden for wrongful death under §537.080 R.S.Mo. Count XII of Plaintiff's First Amended Complaint is against Defendant Chief Ronnie Adams for wrongful death under §537.080 R.S.Mo.

To make a submissible case in a wrongful death suit, a plaintiff must show that the negligence of the defendant "directly caused" or "directly contributed to cause" the patient's death. *Kivland v. Columbia Orthopaedic Group, LLP*, 331 S.W.3d 299, 306 (Mo. banc 2011); *Sanders v. Ahmed*, 364 S.W.3d 195, 208 (Mo. 2012). In wrongful death actions, a plaintiff must establish that "but for" the defendant's actions or inactions, the decedent would not have died. *Sundermeyer v. SSM Reg'l Health Servs.*, 271 S.W.3d 552, 554 (Mo. 2008); *Sanders*, 364 S.W.3d at 209. "Accordingly, the wrongful death statute does not provide, in and of itself, an independent basis for liability; rather, the wrongful death statute proves a means through which a defined class of persons can recover damages pursuant to a cause of action that, but for the injured person's death, would have provided the injured person a basis for recovery." *Abney v. City of Park Hills, Mo.*, No. 4:06CV1258-DJS, 2007 WL 2955578, at *5 (E.D. Mo. Oct. 5, 2007) (citing *Caldwell v. Lester*

*E. Cox Medical Ctrs.-S., Inc.,* 943 S.W.2d 5, 8 (Mo. Ct. App. 1997) ("[D]eath resulting from any tortious act gives rise to a right of action for wrongful death rather than a personal tort.").

As to Defendants Redden and City of Portageville, Missouri, Plaintiffs contend that "Decedent, as a pretrial detainee, was entitled to proper medical care pursuant to the Due Process Clause of the Fourteenth Amendment of the United States Constitution." (FAC, ¶76). They allege Defendant Redden acted with deliberate indifference and conscious disregard for the Decedent's right to medical care by withholding and preventing access to such care until Decedent died." (FAC, ¶77). Plaintiffs allege that Defendant Redden violated Decedent's "right to Due Process under the Fourteenth Amendment of the United States Constitution in the care and treatment of Decedent" by failing to obtain medical care for Decedent, failing to monitor Decedent's medical conditions, and continuing to use a Taser on Decedent while he was handcuffed and "in a state of delirium." (FAC, ¶79). They allege that "as a direct and proximate result of the aforementioned acts and omissions of the defendant Redden, Decedent was denied any chance of surviving his medical crisis." (FAC, ¶80). As to Defendant Ronnie Adams, Plaintiffs allege that "Defendant Adams implemented a policy and protocol in the Portageville Police Department whereby arrestees would not be evaluated for medical care to determine [their] fitness for confinement prior to incarceration." (FAC, ¶92). Plaintiffs note that "Decedent died without ever receiving any medical care." (FAC, ¶92). Plaintiffs maintain that Defendant Adams failed to properly train his officers regarding properly evaluating arrestees medically, failed to have a policy in place for assessing the medical condition of arrestees, and failed to have a policy regarding proper use of a Taser gun. (FAC, ¶93). Plaintiffs assert that "as a direct and proximate result of the aforementioned negligent acts and omissions of defendant Adams, Decedent was denied any chance of surviving his medical crisis." (FAC, ¶94).

Although improperly couched in the language of a Section 1983 claim,[2] Plaintiffs are asserting in Counts X and XII that Defendants were negligent in failing to provide proper medical care to Decedent, which resulted in his death. The elements for a negligence claim are: (1) defendant has a duty to protect the plaintiff from injury; (2) breach of that duty; and (3) an injury suffered by plaintiff which was proximately caused by defendant's breach of duty. *Heffernan v. Reinhold*, 73 S.W.3d 659, 665 (Mo. Ct. App. 2002) ("Plaintiffs must establish the following elements in order to succeed on wrongful death claim on a theory of negligence: (1) the defendant owed a duty of care to the decedent; (2) the defendant breached that duty; (3) the breach was the cause in fact and the proximate cause of his death; and (4) as a result of the breach, the plaintiff suffered damages."); *Jones v. Ames*, 901 S.W.2d 160, 162 (Mo. Ct. App.1995); *Brickey v. Concerned Care of Midwest, Inc.*, 988 S.W.2d 592, 596 (Mo. Ct. App. 1999). For such a claim, Plaintiffs must offer evidence to support finding both cause in fact and proximate cause. *Id.* at 163. To satisfy the cause in fact prong, Plaintiffs must rely on facts to support a finding that Decedent's death would not have occurred but for the alleged negligence of Defendants. *Callahan v. Cardinal Glennon Hospital*, 863 S.W.2d 852, 860–861 (Mo. banc 1993). For the proximate cause prong, they must also preserve facts that would support finding the causal connection between the Decedent's conduct and the alleged resulting death. *Jones*, 901 S.W.2d at 163. "It is axiomatic that the mere fact that injury follows negligence does not necessarily create liability." *Simonian v. Gevers Heating & Air Conditioning, Inc.*, 957 S.W.2d 472, 474 (Mo.App.1997).

---

[2] Plaintiffs continually use the language of Section 1983 claims for deliberate indifference to medical needs, Plaintiffs' claims in Counts X and XII are for wrongful death under Missouri law, which is a negligence standard.

Plaintiffs have provided no evidence to support their claim that intervention by Defendants would have resulted in Decedent surviving his drug overdose.[3] *Sanders*, 364 S.W.3d at 209 (citing *Sundermeyer,* 271 S.W.3d at 554) ("In wrongful death actions, a plaintiff must establish that 'but for' the defendant's actions or inactions, the patient would not have died."). "Proof of causation requires expert medical testimony '[w]hen there is a sophisticated injury, requiring surgical intervention or other highly scientific technique for diagnosis.'" *Super v. White*, 18 S.W.3d 511, 516 (Mo. Ct. App. 2000) (citing *Brickey v. Concerned Care of Midwest, Inc.*, 988 S.W.2d 592, 596 (Mo. Ct. App. 1999)). "[I]n cases where 'there is a sophisticated injury, requiring surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within a lay person's understanding.'" *Love v. Waring*, 560 S.W.3d 614, 619 (Mo. Ct. App. 2018) (quoting *Brickey*, 988 S.W.2d at 596). Hence, expert medical testimony is necessary to prove a causal link between defendant's alleged negligence and the plaintiff's injuries "'except where the want of skill or lack of care is so apparent as to require only common knowledge and experience to understand and judge it.'" *Super v. White*, 18 S.W.3d 511, 516 (Mo. App. 2000) (citation omitted). In response to Defendants' Motion for Summary Judgment, Plaintiffs argue that "[t]here has been no evidence produced demonstrating that a severe overdose is a 'sophisticated' injury." (ECF No. 54 at 9).

---

[3] Indeed, the only "countless objective symptoms of drug intoxication" that Plaintiffs claim Decedent displayed while in the presence of Redden were (1) Officer Redden's use of the taser had no effect on Decedent, (2) Officer Redden held up Decedent for his intake photograph, and (3) Officer Redden helped remove Decedent's clothes. (ECF No. 54 at 8); *see also* ECF No. 54 at 10 ("Decedent had to be held up in his intake photo, had to be held up in the shower, and exhibited physical movements that caused Defendant Nolan to believe that Decedent was on drugs, in some sort of delirium, and unfit for confinement."). The "facts," however, fail to demonstrate that Redden was aware of the extent of Decedent's condition. Redden only observed Decedent as an agitated detainee. Plaintiffs have not established that Officer Redden was aware that Decedent required any medical attention or that any of these claims rise to the level of showing that Officer Redden could be liable for a wrongful death claim. In any event, Plaintiffs have not shown that Decedent would not have died but for Defendants' actions or inactions.

Despite providing no evidence in support, Plaintiffs further make the remarkable statement: "One thing is for certain: Had [Decedent] not been in the custody of the defendants the night of August 17, 2018 he would not have died." (ECF No. 54 at 10). Plaintiffs have not provided any expert testimony to bolster their assertion that any of Defendants' alleged acts of negligence caused or contributed to Decedent's death. In this case, the Court cannot say that the "logical conclusion from the evidence is that, if certain things" were done differently (if Decedent had received medical intervention or if Decedent had not been tasered), certain results (Decedent's death) would not have occurred. *Love v. Waring*, 560 S.W.3d 614, 620 (Mo. Ct. App. 2018). Based upon the record before it, the Court cannot determine that Defendants' failure to act caused Decedent's death. Thus, the Court holds that Plaintiffs have not met their burden to present evidence that Decedent would not have died but for Defendants' alleged conduct, and Defendants are entitled to summary judgment on Plaintiffs' wrongful death claims against Defendants.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of Portageville, Officer Justin Redden, and Chief Ronnie Adams' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted on Counts IX and XI of Plaintiffs' First Amended Complaint (ECF No. 34) is **GRANTED**. Counts IX and XI of Plaintiffs' First Amended Complaint are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Defendant City of Portageville, Officer Justin Redden, and Chief Ronnie Adams' Joint Motion for Summary Judgment on Counts X and XII of Plaintiffs' First Amended Complaint (ECF No. 50) is **GRANTED**. Counts X and XII are **DISMISSED** with prejudice.

**IT IS FINALLY ORDERED** that Defendants City of Portageville, Redden and Adams' Joint Motion for Oral Argument on these Defendants' Motion to Dismiss Counts IX and XI of Plaintiffs' First Amended Complaint and Motion for Summary Judgment on Counts X and XII of Plaintiffs' First Amended Complaint (ECF No. 70) is **DENIED** as moot.

Dated this 27th day of October, 2020.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**